## Com. ex rel. Snyder v. Spangler

*James B. Yelovich*, of *Kimmel, Rascona, Yelovich & Bowman*, for defendant.

No appearance for plaintiff.

SHAULIS *J.*, January 9, 1979—The court has for its consideration defendant's petition to terminate an order of attachment on the basis of improper jurisdiction. A brief history of the case will be helpful.

Plaintiff Ruby J. (Spangler) Snyder and defendant Fred L. Spangler were married in 1958. They separated in 1975 and were divorced in 1976. Plaintiff filed a complaint seeking support for one of the couple's three children in June, 1976. At that time both parties were residents of Somerset County. A support order for $25 a month for one child was entered in June of 1976. The order was modified in August 1976 by increasing the amount to $75 for all three children. Sometime thereafter defendant moved to Cleveland, Ohio. In November 1977, he

filed a petition to reduce support asserting that one of the three children was now 18 years old. The court examined all of the facts and discovered that defendant was in arrears as to the existing support order. In addition, defendant had obtained employment with the Ford Motor Company and had experienced a substantial increase in wages. In January 1978, the court entered a new order, increasing support payment to $200 for the remaining underage children and ordering payment of an additional $25 per month for arrearages. The arrearages continued and in April, 1978, the court entered a wage attachment order directing the Ford Motor Company of Cleveland, Ohio, to withhold half of defendant's wages and to answer certain questions. Ford Motor Company complied with the order. Based on the information received, the court entered a wage attachment order in May, 1978.

Defendant Spangler now raises two objections to the attachment order: (1) An attachment order is an action in rem. Since the property subject to the order (wages) is located in Ohio, the court is without authority to enforce its order, and (2) the attachment proceeding is unconstitutional because it was not preceded by notice and a hearing as required by Sniadach v. Family Finance Corp., 395 U.S. 337, 23 L.Ed. 2d 349 (1969). Defendant requests that the wage attachment be dissolved and that the domestic relations department be directed to initiate appropriate enforcement proceedings under the Revised Uniform Reciprocal Enforcement of Support Act, 42 Pa.C.S.A. §6741.

The support order presently in effect was issued in compliance with the provisions of the Civil Procedural Support Act of July 13, 1953, P.L. 431, 62

P.S. §2043.31 et seq. (substantially reenacted or codified at 42 Pa.C.S.A. §6701 et seq.). That law provides procedures for the determination of support obligations and the enforcement of support orders. Attachment of wages is authorized under 62 P.S. §2043.39(c) (42 Pa.C.S.A. §6709), which states:

"(c) The wages, salary or commissions of any person owing a duty of support may be attached in the following manner:

"(1) A certified copy of the order of support shall be served on the employer, whether a corporation, political subdivision, association, company, firm or individual, and may be served by registered mail or by any adult person or by any other manner provided by law.

"(2) Such certified copy of the order shall contain an order directing the employer to make a full answer, within ten (10) days after services of the order, of the amount of wages, salary or commissions of the defendant, and further directing the employer to make no payment to the defendant over 50% of the amount due him until further order of the court.

"(3) The court shall determine the amount of the wages, salary or commissions which shall be regularly paid by the employer to the Domestic Relations Division and shall so notify said employer.

"(4) Thereafter, it shall be the duty of the employer to pay such amount regularly to the Domestic Relations Division, and upon failure so to pay shall be in contempt and subject to the court's order as now provided in proceedings against defendant. The employer is authorized to deduct 2% of the

amount paid under the order from the wages of the defendant for clerical work and expense involved in complying therewith.

"(5) Such attachment shall continue until discharged by order of the court.

"(d) The Domestic Relations Division shall make periodic reports to the court of defaults in and failure to comply with any order of the court." July 13, 1953, P.L. 431, sec. 9; July 3, 1957, P.L. 452, sec. 1.

The next section of the Civil Procedural Support Law indicates that the court of competent jurisdiction which makes the support order retains jurisdiction for the enforcement, modification and termination of the order, stating:

"2043.40 Jurisdiction  The court making the order shall at all times maintain jurisdiction of the cause for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding such order, without limiting the right of a complainant to institute additional proceedings for support in any county wherein the defendant resides or where his property is situated." July 13, 1953, P.L. 431, sec. 10.

The attachment proceedings conducted against defendant's wages complied with the requirements of the Civil Procedural Support Law. It is defendant's contention that those sections do not apply to his situation.

Defendant contends that attachment proceedings are either actions in rem or actions quasi in rem. As such, the use of the attachment action must be within the territorial limits of the court's jurisdiction. Since defendant now resides in another state and is employed in that state, it is

contended that the res (wages in this case) is not located within the limits of the court's authority and the court therefore lacks jurisdiction to attach wages.

The word "jurisdiction" is a term of large and comprehensive import and embraces every kind of judicial action, and hence, every movement by a court is necessarily the exercise of jurisdiction: Strank v. Mercy Hospital of Johnstown, 376 Pa. 305, 102 A. 2d 170 (1954). Jurisdiction refers to the competency of the court to determine controversies of the general class to which a case presented for its consideration belongs and to bind the parties to the litigation by its adjudication: Com. v. Ansell, 56 D. & C. 2d 759, 26 Somerset 248 (1971). Thus, jurisdiction refers to both jurisdiction over the subject matter and jurisdiction over the person.

The test for determining whether a court has jurisdiction of the subject matter is the competency of the court to determine controversies of the general class to which the case presented for its consideration belongs: Strank, supra. The Civil Procedural Support Law gives the court jurisdiction over the subject matter.

Jurisdiction of the person may only be obtained through consent, waiver, or proper service of process: Slezynger v. Bischak, 224 Pa. Superior Ct. 552, 307 A. 2d 405 (1973). The distinction between jurisdiction in personam and jurisdiction in rem runs through numerous cases, mostly in connection with the doctrine established in the case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), that a state court can acquire jurisdiction in personam over a defendant only if process has been served on him in person in the state to which the court belongs, unless he has voluntarily submitted

himself to the court's jurisdiction: 20 Am. Jur. 2d Courts §118.

There is a wide distinction between a course of judicial procedure, the object of which is to subject the res to the power of the state directly by the judgment or decree which is entered and a procedure which only affects or disposes of the res by compelling a party to the action to control or dispose of the res in accordance with the mandate or decree. The former is a proceeding in rem; the latter is a proceeding in personam: Mid-City Bank & Trust Co. v. Myers, 343 Pa. 465, 23 A. 2d 420 (1942). The basis of jurisdiction in an in rem proceeding is the presence of the subject property within the territorial jurisdiction of the forum state: Whitmer v. Whitmer, 243 Pa. Superior Ct. 462, 365 A. 2d 1316 (1976).

If *tangible* goods are not in the possession of the garnishee within the jurisdiction of the court out of which the writ of attachment issued, they cannot be touched by that writ and are, therefore, not bound by it. An *intangible* thing—a debt due from the garnishee to the defendant—cannot be actually seized anywhere, but being an effect of the defendant in the hands of the creditor, is bound by the attachment from the time it is served: Wiener v. American Ins. Co., 224 Pa. 292, 73 Atl. 443 (1909). The original conception of garnishment as a proceeding based on jurisdiction in rem over a thing has been entirely superseded by a conception of garnishment as a transitory personal action against the garnishee: Marratto v. Marratto, 105 Pitts.L.J. 405 (1957).

The jurisdiction issue is thus reduced to a question of whether the court has personal jurisdiction over the garnishee. The garnishee was properly

served with the attachment order as required by 62 P.S. §2043.39(c)(1) and the garnishee has submitted the requested information and complied with the court order.

The execution defendant is permitted to file preliminary objections to a garnishment proceeding: 9 Goodrich-Amram 2d 3142(a)2.1. Pa.R.C.P. 3142(c) states that, "A question of jurisdiction may be raised only by preliminary objections which shall be filed before the garnishee enters an appearance or files an answer to interrogatories." Thus the defendant may have had standing to object to any defect in jurisdiction, but the defect (if any) has now been waived.

In summary, in an attachment proceeding against wages, in order for the court to obtain jurisdiction over the res, the court must have jurisdiction over the garnishee. Here, the garnishee was properly served and has complied with the court's order. In addition, any objection to jurisdiction over the garnishee was waived by failure to file timely preliminary objections. Thus, the court has jurisdiction over the garnishee and the wage attachment is proper.

Defendant also contends that the attachment is improper because it was not preceded by notice and a hearing as required by Sniadach v. Family Finance Corp., supra. In that case, the United States Supreme Court held that the Wisconsin *prejudgment* garnishment procedure whereby defendant's wages are frozen in the interim between the garnishment of the wages and the culmination of the main suit, defendant during this interim being thus deprived of his enjoyment of earned wages without any opportunity to be heard and to tender any defense that he may have, violates the due process

582

clause of the Fourteenth Amendment. The case at hand is clearly distinguishable.

The instant case does not deal with a prejudgment garnishment as did Sniadach. Here, defendant received notice and participated in the hearing on the modification of his support order. The garnishment was an enforcement of that order. The Sniadach decision cannot be interpreted as invalidating post-judgment enforcement of a court order where the defendant has participated in the principal action.

## ORDER

Now, January 9, 1979, defendant's petition to terminate order of attachment is dismissed at the cost of defendant.